1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

CHRISTOPHER STEIN, et al.,

Case No.  22-cv-09203-SK

8

Plaintiffs,

9

v.

**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

10

ETHOS TECHNOLOGIES, INC.,

11

Defendant.

Regarding Docket No. 38

12
      Plaintiffs bring an unopposed motion for preliminary approval of the proposed settlement.

13
They seek the following:  (1) provisional certification of the proposed Settlement Class and the

14
California Subclass; (2) preliminary approval of the proposed Class Action settlement; (3) a

15
determination that notice should issue to the Settlement Class and California Subclass; (4) a

16
determination that the named Plaintiffs in the consolidated actions should be named as Class

17
Representatives, and (5) the appointment of the undersigned Plaintiffs' Counsel as Settlement

18
Class Counsel.  Having considered the motion and the documents on file, the Court hereby

19
GRANTS the motion.

20
## BACKGROUND

21
      Ethos Technologies, Inc. ("Defendant") is a provider of insurance that specializes in life

22
insurance.  (Dkt. No. 38 at 2.)  It provides an online application on its public website that enables

23
web users to apply for life insurance for free.  (*Id.*)  This application utilizes a third-party service

24
provider to prefill and submit certain information, including applicants' Social Security numbers

25
("SSN"), to insurance carriers for underwriting purposes.  (*Id.* at 3.)  As part of this process, SSNs

26
are supposed to be encrypted and then returned to the page source code of Defendant's web

27
application layer.  (*Id.*)

28
      In August 2022, a change to the application's code caused unencrypted SSNs to be

returned to the page's source code.  (*Id.*)  Defendant did not learn of this coding error until December 2022 after Defendant discovered abnormal patterns of insurance applications.  (*Id.*)  Defendant's investigation revealed that the change to the application's code enabled "unknown actors" to access the SSNs of the page's users, including named plaintiffs Christopher Stein, Josephine Dibisceglia, John Blumenstock, Thomas Rossello, Jeffry Branch, Derrick Carter, Trevor Pearch, James Schneider, and Tameka Young (collectively, "Plaintiffs"), and a group of other users of the application.  (*Id.* at 1, 3)  Subsequently, Defendant sent notification letters to Plaintiffs and approximately 34,000 other individuals whose SSNs were potentially exposed in the breach (the "Data Incident"), and that group included approximately 1,302 residents of California.  (*Id.*)  In total, the parties estimate that the Data Incident affected approximately 36,000 individuals.  (Dkt. No. 38-1 (Settlement Agreement at ¶ 1.14).)

A series of class action lawsuits brought by certain of the named Plaintiffs individually and on behalf of all others similarly situated were filed in this Court and consolidated under this lead case.  (Dkt. No. 38 at 3-4.)  Plaintiffs subsequently filed a Consolidated Class Action Complaint, consolidating the remainder of the named Plaintiffs under this action.  (*Id.* at 4.)  Plaintiffs and Defendant exchanged Rule 408 discovery and engaged in mediation, ultimately accepting a proposal submitted by the mediator and memorialized in the parties' Settlement Agreement.  (*Id.*)

## SETTLEMENT PROPOSAL

The parties' proposed Settlement Agreement contains the following terms.

### A.  Proposed Class

The nationwide class definition for settlement purposes proposed by the Settlement Agreement is "all persons identified by Defendant (or its agents or affiliates) as being among those individuals impacted by the Data Incident, including all who were sent a notice of the Data Incident" (the "Settlement Class").  (Dkt. No. 38-1 (Settlement Agreement at ¶ 1.30).)  Plaintiffs also seek to certify for settlement purposes a California Subclass defined as "all persons identified by Defendant (or its agents or affiliates) as being among those individuals residing in California impacted by the Data Incident, including all who were sent a notice of the Data Incident" (the "California Subclass").  (*Id.* at ¶ 1.33.)

United States District Court
Northern District of California

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**B.  Payment Terms**

Defendant has agreed to establish a one million dollar ($1,000,000) non-reversionary cash Settlement Fund (the "Settlement Fund") that will be applied in the following order:

(1) Approved costs of settlement administration and notice, at an estimated cost of approximately $97,987.  (Dkt. No. 38 at 8.)

(2) Approved attorneys' fees and expenses. Plaintiffs' counsel has agreed to request no more than one-third of the Settlement Fund as reimbursement for attorneys' fees, and no more than $20,000 for reimbursement of costs and expenses. Thus far, Plaintiffs' counsel have accrued a lodestar of approximately $281,536.40, and anticipate accruing additional lodestar totals as the case proceeds through confirmatory discovery, settlement administration, final approval, appeal, and any other hearings ordered by this Court.  (*Id.* at 10.)

(3)  Approved service awards. Plaintiffs intend to request service awards of up to $2,000 each. (Dkt. No. 38-1 (Settlement Agreement at ¶ 7.3).)

Any remaining funds will be applied until exhausted in the following order:

(4) Claims for out-of-pocket expenses and loss reimbursement up to $5,000 per valid claim. (Dkt. No. 38 at 5.)  The Settlement Agreement defines out-of-pocket expenses and losses as unreimbursed costs, expenditures, or losses that are fairly traceable to the Data Incident. (Dkt. No. 38-1 (Settlement Agreement at ¶ 2.3.1).)

(5) Cash payments to California Subclass members up to $100 per valid claim in addition to any other settlement benefits available as a result of the statutory claim available to them under the California Consumer Privacy Act ("CCPA").  (*Id.* at 6.)  These payments may be *pro rata* decreased if insufficient funds remain in the Settlement Fund.  (*Id.* at ¶ 2.3.2.)

**(6)**  *Pro rata* cash payments, up to $100 per Settlement Class Member, that shall be *pro rata* increased or decreased based on the funds remaining in the Settlement Fund.  (*Id.* at ¶ 2.3.3.)

**C.  Non-Monetary Settlement Benefits**

All members of the Settlement Class will also be provided access to non-monetary

3

1  settlement benefits.  Defendant will provide Experian credit monitoring and identity-protection

2  services for a period of 12 months from the date a member claims the offer, consecutively to any

3  credit monitoring services that a class member has received from Defendant.  These monitoring

4  services will include a minimum of the following features: (1) identity theft insurance with a

5  $1,000,000 policy limit, (2) real-time credit monitoring services, and (3) access to fraud resolution

6  agents.  (*Id.* at 7.)  Defendant shall pay for the costs of such services separately and apart from the

7  Settlement Fund, and such services may be obtained by all Settlement Class members regardless

8  of whether they file a claim or submit a claim for monetary payment under the settlement.

9  (Dkt. No. 38 at 6-7.)

10         Defendant has further agreed to take reasonable steps to secure personal information within

11  its platform, agreeing that it has taken or will take the following minimum measures:

12      (1) Embed security engineers into product engineering teams;

13      (2) Use mechanisms to block suspicious website traffic;

14      (3) Use reCAPTCHA logging or similar technologies to preclude automated use of their

15          application;

16      (4) Use a third-party auditor/penetration tester and internal security personnel to periodically

17          test and audit their system;

18      (5) Periodically audit, test, and train their security personnel on new or modified procedures;

19      (6) Periodically conduct computer system scanning and security checks;

20      (7) Periodically conduct internal training and education to inform employees about

21          Defendant's security practices.

22  (Dkt. No. 38 at 7-8.)

23      **D.  Releases**

24         The proposed Settlement Agreement states that, "[u]pon the Effective Date, each

25  Settlement Class Member and Plaintiff, shall be deemed to have, and by operation of the Final

26  Approval Order shall have fully, finally, and forever released, relinquished, and discharged all

27  Released Claims, including Unknown Claims." (Dkt. No. 38-1 (Settlement Agreement at ¶ 6.1).)

28  Upon the Effective Date, Settlement Class Members and Plaintiffs shall be permanently barred

United States District Court
Northern District of California

4

1   from participating in any action in any forum (other than participation in recovery in the present

2   action) asserting any of the Released Claims. *Id.*

3          Released Claims are defined as "any and all past, present, and future claims, causes of

4   action, demands, damages, debts, liabilities, remedies, proceedings, actions suits, allegations,

5   assertions of wrongdoing, and any demand for injunctive relief or any other type of equitable or

6   legal relief including, but not limited to, any causes of action arising under or premised upon any

7   statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state,

8   province, county, city, or municipality, whether known or unknown, suspected or unsuspected,

9   asserted or unasserted, discovered or undiscovered, liquidated or unliquidated, accrued or

10  unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief

11  that either has been asserted, was asserted, or could have been asserted by any Settlement Class

12  Member against any of the Released Persons with respect to the Data Incident.  Released Claims

13  shall not include the right of any Settlement Class Member or any of the Released Persons to

14  enforce the terms of the settlement contained in this Settlement Agreement and shall not include

15  the claims of individuals in the Settlement Class who have timely excluded themselves from the

16  Settlement." (*Id.* at ¶ 1.26.)

17         Unknown Claims are defined as "any of the Released Claims that any Settlement Class

18  Member, including Plaintiff, does not know or suspect to exist in his/her favor at the time of the

19  release of the Released Persons that, if known by him or her, might have affected his or her

20  settlement with, and release of, the Released Persons, or might have affected his or her decision

21  not to object to and/or participate in the Settlement Agreement."  (*Id.* at ¶ 1.38.)

22         **E.  Procedures for Claims**

23         Settlement Class members submitting a claim for out-of-pocket losses, claims available

24  under the CCPA, and/or a *pro rata* cash payment must complete and submit a claim form to the

25  Claims Administrator, postmarked or submitted online on or before the claims deadline. (Dkt. No.

26  38-1 (Settlement Agreement at ¶¶ 2.3, 2.3.4).)  Claim forms filed for out-of-pocket loss

27  reimbursement must be verified by the submitting Settlement Class member with a statement that

28  his or her claim is true and correct, to the best of his or her knowledge of and belief, and is being

1   made under penalty of perjury. (*Id.* at ¶ 2.3.4.)

2       The Court requires post-distribution accounting, with $50,000 of the attorneys' fees to be

3   held back until that final accounting will be made.

4      **F. Deadlines**

5         1. No later than 14 days after the entry of this Preliminary Approval Order, Defendant

6            shall provide the Claims Administrator with the names, email addresses, and any

7            last known physical addresses of each Settlement Class member. (Dkt. No. 38-1

8            (Settlement Agreement at ¶ 3.3(a)).)

9         2. Notice Commencement Date: 30 days after the entry of this Preliminary Approval

10           Order.  (*Id.* at ¶ 1.21.)

11         3. Objection Date: the parties propose a date 75 days from the Notice Commencement

12           Date.  (*Id.* at ¶ 1.22.)

13         4. Opt-Out Date: the parties propose a date 75 days from the Notice Commencement

14           Date.  (*Id.* at ¶ 1.23.)

15         5. Claims Deadline: the parties propose a date 105 days from the Notice

16           Commencement Date. (*Id.* at ¶ 1.8.)

17         6. As determined at the hearing on the motion for preliminary approval, the hearing

18           on the motion for final approval will be held by this Court on January 22, 2024.

19                        **ANALYSIS**

20       A class settlement must be fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  When

21   parties reach an agreement prior to class certification, "courts must peruse the proposed

22   compromise to ratify both the propriety of the certification and the fairness of the settlement."

23   *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The court must first assess whether a

24   class exists, and then must "carefully consider whether a proposed settlement is fundamentally

25   fair, adequate, and reasonable, recognizing that it is the settlement taken as a whole, rather than the

26   individual component parts, that must be examined for overall fairness."  *Id.* (internal quotation

27   marks and brackets omitted).  Before assessing the settlement proposed by the parties, the Court

28   must first confirm that the settlement class satisfies the requirements of Rule 23(a) and (b).

United States District Court
Northern District of California

### A.  Conditional Certification of Settlement Class

Class certification under Rule 23 is a two-step process. First, class actions must meet the following requirements for certification under Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a). "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).  Second, after satisfying these requirements, the court must find that the plaintiff has established that the action meets one of the bases for certification under Rule 23(b).

### 1.  Rule 23(a)

As explained below, the Court finds that the requirements of Rule 23(a) have been satisfied for the purpose of conditional certification of the Settlement Class and the California Subclass.

#### i.    Numerosity

The Court finds that Rule 23(a)(1) is satisfied.  The Settlement Class comprises approximately 36,000 individuals identified by Defendant as being among those impacted by the Data Incident, and the California Subclass comprises approximately 1,302 such individuals who reside in California. (Dkt. No. 38 at 3.)  Both the Settlement Class and California Subclass contain far greater than the minimum number of members to satisfy the numerosity requirement.  *Quezada v. Con-Way Freight, Inc.*, No. C 09-03670, 2012 WL 4901423, at *3 (N.D. Cal. Oct. 15, 2012) (noting that in general, classes of more than 75 members usually satisfy the numerosity requirement); *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal 2007) ("courts generally find that numerosity factor is satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer").  Both the Settlement Class and the California Subclass thus satisfy the numerosity requirement.

#### ii.    Commonality

The Court finds that Rule 23(a)(2) is satisfied.  A class has sufficient commonality if

"there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Here, the common questions of law and fact center around Defendant's conduct with respect to its data security practices, presenting legal and factual issues common to the underlying claims that are susceptible to class-wide determination. In very similar data breach cases, this Court has found that the commonality requirement is satisfied because class members suffer the same injury where their personal information was stored in one data repository maintained by a defendant that suffered a security breach. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 308 (N.D. Cal. 2018). In such cases, the factual questions are uniform: "the extensiveness and adequacy of [Defendant's] security measures lie at the heart of every claim," and "the answer to those questions does not vary from Settlement Class Member to Settlement Class Member" because all the relevant personal information was stored "in one data warehouse" *Id.* Furthermore, "[r]elated factual questions about whether [Defendant] knew its data security was inadequate and whether [Defendant] amply responded to the data breach also apply uniformly." *Id.* So, too, in such cases are the "common answers to these questions . . . apt to drive the resolution of the legal issues," because "[a]ll of Plaintiffs' claims are premised on and dependent on the notion that [Defendant] violated the law by failing to adequately secure the personal information in its data warehouse." *Id.* (internal quotation marks omitted) Here, as in other similar data breach cases, the Settlement Class and California Subclass satisfy the commonality requirement because their data was stored in one location maintained by Defendant and compromised in the same Data Incident, raising common questions of the factual and legal adequacy of Defendant's security measures.

### iii. Typicality

The Court finds that Rule 23(a)(3) is satisfied. Typicality under Rule 23(a)(3) is shown when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." In other words, typicality is satisfied "when each class member's claim arises from the same course of events, and each class member arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Anthem*, 327 F.R.D. at 309 (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)). The purpose of the typicality requirement, which is permissive, is to ensure that the named representatives'

8

1    interest aligns with the interests of the class; accordingly, the claims of the class representatives

2    need not be substantially identical to those of absent class members, but only reasonably co-

3    extensive.  *Id.*  Here, the claims of Plaintiffs are reasonably co-extensive with those of the

4    Settlement Class Members, as they allege that their personal data was compromised by the same

5    allegedly inadequate data security practices of Defendant that allegedly harmed the rest of the

6    Settlement Class Members.

7        **iv.    Adequacy**

8        The Court finds that Rule 23(a)(4) is satisfied.  Rule 23(a)(4) requires that the

9    representative parties fairly and adequately protect the interests of the class.  The adequacy inquiry

10   asks two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest

11   with other class members and (2) will the named plaintiffs and their counsel prosecute the action

12   vigorously on behalf of the class?"  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943

13   (9th Cir. 2015) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

14   Generally, in data breach cases, "[a]t the fundamental level," there are no "intractable divisions or

15   conflicts" between Settlement Class Members who were "victims of the same event" and who

16   "generally seek the same relief: compensation for the harms already incurred as a result of the

17   breach and protection against the use of their personal information going forward."  *Anthem*, 327

18   F.R.D. at 309-10.  Here, there is no indication that Plaintiffs and their counsel have a conflict with

19   other potential class members.  As with Settlement Class members generally, Plaintiffs are among

20   those who received notification of the Data Incident from Defendant, experienced the same injury,

21   and seek compensation for harms allegedly suffered as a result of Defendant's allegedly

22   inadequate data security practices, making their interests consistent with those of the other

23   Settlement Class members.  To date, Plaintiffs and their counsel have vigorously prosecuted this

24   action on behalf of the Settlement Class and there is nothing before the Court to suggest that they

25   will do otherwise in the future.

26       **2.    Rule 23(b)(3)**

27       "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

28   certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or

United States District Court
Northern District of California

9

(3)." *Hanlon*, 150 F.3d at 1022. In this case, Plaintiffs propose certification of the Settlement Class under Rule 23(b)(3), (Dkt. No. 38 at 15), "which is appropriate whenever the actual interests of the parties can be best served by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (internal quotation marks and citation omitted).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Courts engaging in the 23(b)(3) inquiry must determine whether two conditions have been satisfied: first, predominance, pursuant to which common questions must predominate over any questions affecting only individual members; and second, superiority, meaning that class resolution must be superior to other available means for the fair and efficient adjudication of the controversy.  *Hanlon*, 150 F.3d at 1022 (citing Fed R. Civ. P. 23(b)(3)).

### i.   Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S 591, 623 (1997).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d. ed. 1986)).

Here, Plaintiffs contend that predominance is satisfied because the class comprises "a cohesive group of individuals who suffered the same harm in the same way because of the defendant's conduct."  (Dkt. No. 38 at 16) (cleaned up).  Plaintiffs' claims, like those of the other Settlement Class members, turn on the adequacy of the security measures that Defendant used to protect their information, and thus can be resolved using the same evidence for all Settlement Class members.  As this Court has found in other similar data breach cases, predominance is satisfied. *See Anthem*, 327 F.R.D. at 312 ("Plaintiffs' case for liability depends, first and foremost, on whether [Defendant] used reasonable data security to protect Plaintiffs' personal information.

10

Indeed, the claims rise or fall on whether [Defendant] properly secured the stolen personal information, such that [Defendant's] security should be improved and affected class members should be afforded a remedy.  That question can be resolved using the same evidence for all Settlement Class Members . . . Thus, the focus would remain on the extent and sufficiency of the specific security measures that [Defendant] employed.  This is the precise type of predominant question that makes class-wide adjudication worthwhile.")

### ii.    Superiority

The superiority inquiry asks whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). That is, "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  The court considers the following four factors as part of the superiority inquiry: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).  However, when "confronted with a request for settlement-only class certification," the court need not address the fourth factor, manageability.  *Amchem*, 521 U.S. at 620.

Here, Plaintiffs contend that superiority is satisfied because adjudicating individual actions in this case is impracticable, there are no other individual actions currently pending that arise from the Data Incident; this forum is home to Defendant and the majority of the class members; and, because the certification of this class is for the purpose of settlement rather than further litigation, certification creates no manageability issues.  (Dkt. No. 38 at 16-17.)  As this Court has found when confronting a request for settlement-only class certification in a similar data breach case where the amount at stake for any given plaintiff is small, the costs of such technical litigation involving novel legal issues are high, other actions are not pending, and the defendant has "significant" ties to the forum, class treatment is the superior method of adjudicating the thousands

United States District Court
Northern District of California

1    of consumer claims arising from this Data Incident, satisfying the superiority requirement.

2    *Anthem*, 327 F.R.D at 315-16.

3        Having determined that class treatment appears to be warranted under Rule 23(a) and Rule

4    23(b)(3), *see Alberto GMRI, Inc.* 252 F.R.D 652, 664 & n.9 (E.D. Cal. 2008), the Court now turns

5    to the question whether the settlement should be preliminarily approved pursuant to Rule 23(e).

6    **B. Preliminary Approval of the Settlement**

7        In determining whether a settlement agreement is fair, adequate, and reasonable to all

8    concerned under Federal Rule of Civil Procedure. 23(e)(2), a court typically considers the

9    following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and

10   likely duration of further litigation; (3) the risk of maintaining class action status throughout trial;

11   (4) the amount offered in settlement; (5) the extent of discovery contemplated and the stage of the

12   proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

13   participant; and (8) the reaction of class members of the proposed settlement." *In re Bluetooth*

14   *Headset Prods. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v.*

15   *Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004)).

16       However, when "a settlement agreement is negotiated prior to formal class certification,

17   consideration of these eight … factors alone is" insufficient.  *Id.*  In these cases, courts must show

18   not only a comprehensive analysis of the above factors, but also that the settlement did not result

19   from collusion among the parties.  *Id.* at 947.  Because collusion "may not always be evident on

20   the face of settlement, … [courts] must be particularly vigilant not only for explicit collusion, but

21   also for more subtle signs that class counsel has allowed pursuit of their own self-interests and that

22   of certain class members to infect the negotiations."  *Id.*  In *Bluetooth,* the court identified three

23   such indicators:

24

25       (1) when class counsel receives a disproportionate distribution of the
         settlement; or when the class receives no monetary distribution but
26       counsel is amply rewarded;

27       (2) when the parties negotiate a "clear sailing" arrangement providing
         for the payment of attorney's fees separate and apart from class
28       funds without objection by the defendant (which carries the potential

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement); and

*(3)* when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (citations omitted).

However, the Court cannot fully assess all of these fairness factors until after the final approval hearing; thus, "a full fairness analysis is unnecessary at this stage." *Alberto*, 252 F.R.D. at 665 (internal quotation marks and citation omitted).

Rather, at this stage "the settlement need only be *potentially* fair, as the Court will make a final determination of the adequacy at the hearing on Final Approval, after such time as any party has a chance to object and/or opt out." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 387 (C.D. Cal. May 31, 2007). In general, this fairness inquiry focuses primarily on aspects of the settlement that "directly lend themselves to pursuit of self interest . . . namely attorneys' fees and the distribution of relief . . . among class members." *Alberto*, 252 F.R.D. at 667 (quoting *Staton*, 327 F.3d at 960) (ellipses in original).

For now, "[p]reliminary approval of a settlement and notice to the class is appropriate if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *Cruz v. Sky Chefs, Inc.*, No. 12-CV-02705, 2014 WL 2089938, at *7 (N.D. Cal. May 19, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. Apr. 12, 2007).

**1.  Terms of the Proposed Settlement**

Pursuant to the terms of the proposed settlement, Defendant denies liability, and the Settlement Agreement releases known and unknown claims of Settlement Class members against Defendant. (Dkt. No. 38-1 (Settlement Agreement at ¶¶ 2.1, 6.1).) In consideration for these releases, Defendant shall establish a Settlement Fund equaling one million dollars, which will first be used to pay for the costs of claims administration, attorneys' fees and expenses, and any approved service awards. (Dkt No. 38 at 5.) The remainder will then be paid out to claimants in the order described above. (Dkt. No. 38-1 (Settlement Agreement at ¶ 1.32).)

1    No later than 14 days after preliminary approval, Defendant will provide the Claims

2    Administrator with contact information for the members of the Settlement Class.  (*Id.* at ¶ 3.3(a).)

3    30 days after the Notice Commencement Date, the Claims Administrator will begin providing

4    notice to the Settlement Class via mail or email, and will also set up a settlement website and

5    publish the notice in a national publication.  (*Id.* at ¶¶ 1.21, 3.3.)  This Court shall set the cutoff

6    dates for Settlement Class members to object or opt out of the class in its preliminary approval

7    order, for which the parties propose a date 75 days from the Notice Commencement date.  (*Id.* at

8    ¶¶ 1.22, 1.23.)  The Court shall also set the cutoff date for Settlement Class members to submit

9    valid claims (the "Claims Deadline"), for which the parties propose a date 105 days from the

10   Notice Commencement Date.  (*Id.* at ¶ 1.8.)  The Court will subsequently hold a final approval

11   hearing.  (*Id.* at ¶¶ 3.5.)  No later than 15 days after final approval, Defendant will advance the

12   balance of the Settlement Fund.  (*Id.* at ¶ 2.2.)

13    Settlement Class members will have the opportunity to submit claims for out-of-pocket

14   losses, any CCPA payments available to California Subclass members, and any *pro rata* cash

15   payments from the remaining amount of the Settlement Fund by submitting a Claim Form to the

16   Claims Administrator (with supporting documentation for out of pocket loss claims) before the

17   Claims Deadline.  (*Id.* at ¶¶ 1.8, 2.3.)  Claims for out-of-pocket losses will be paid out first, up to

18   $5,000 per claimant.  (*Id.* at ¶ 2.3.1.)  Remaining funds will be paid out to eligible claimants, first

19   as CCPA payments of up to $100 to eligible members of the California Subclass, to be decrease

20   *pro rata* if necessary depending on the amount remaining in the Settlement Fund, followed by *pro*

21   *rata* cash payments of $100 that will be increased or decreased *pro rata* based on the amount

22   remaining in the Settlement Fund.  (*Id.* at ¶¶ 2.3, 2.3.2, 2.3.3.)  In addition to the settlement's

23   monetary benefits, Defendant will provide credit monitoring and identity-protection services to

24   Settlement Class members and has committed to implementing additional internal security

25   measures.  (*Id.* at ¶¶ 2.4, 2.5.)

26    Within 60 days after the Notice Commencement Date, Class Counsel will move for an

27   award of attorneys' fees, not to exceed one-third of the Settlement Fund, plus reimbursements and

28   costs of up to $20,000, and service awards for the Class Representatives of up to $2,000 each.  (*Id.*

14

1    at ¶¶ 7.2, 7.3.) The amount of these awards and fees will be determined by the Court.  (*Id.* at ¶

2    7.2.)

3        **2.  The Fairness Factors**

4            **i.    Serious, Informed, Noncollusive Negotiations**

5        This factor concerns "the means by which the parties arrived at settlement."  *Champagne v.*

6    *Plannernet, Inc.*, No. 17-CV-02128, 2019 WL 13254284, at *8 (Apr. 22, 2019) (quoting *Harris v.*

7    *Vector Mktg. Corp.*, No. CV-08-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011)).  In

8    order "to have brokered a fair settlement," the parties "must have been armed with sufficient

9    information about the case to have been able to reasonably assess its strengths and value."  *Acosta*,

10   243 F.R.D. at 396.  From the court's perspective when considering a pre-certification settlement,

11   enough information must exist to enable it to assess "the strengths and weaknesses of the parties'

12   claims and defenses, determine the appropriate membership of the class, and consider how class

13   members will benefit from settlement" in order to determine its fairness and adequacy.  *Id.* at 397

14   (internal quotation marks omitted).  While the use of a mediator alone is not dispositive of whether

15   the settlement is fair and reasonable, it is strong evidence of a noncollusive settlement, *Bluetooth*,

16   654 F.3d at 948, and the parties' engagement in discovery further supports the conclusion that

17   Plaintiff had adequate information to negotiate a fair settlement.  *Champagne*, 2019 WL 13254284

18   at *8.

19       Here, the parties gathered information through informal Rule 408 discovery and informally

20   exchanged non-public information concerning the Data Incident and the size of the putative class

21   over the course of several weeks.  (Dkt. No. 38 at 4, 22.)  The parties also engaged in a full day of

22   mediation but were unable to reach a resolution, and they ultimately accepted a proposal submitted

23   by a mediator that they subsequently amended with additional reasonable terms.  (*Id.* at 4.)

24   Plaintiffs further represent that the parties' negotiations occurred at arm's length and in good faith.

25   (*Id.* at 4.)

26       Based on the information before the Court, the settlement appears to be the product of

27   serious, informed, non-collusive negotiations, which weighs in favor of preliminary approval of

28   the settlement.

1

United States District Court
Northern District of California

### ii.    Lack of Obvious Deficiencies

The Court next looks to the settlement agreement for any obvious deficiencies. *Champagne*, 2019 WL 13254284, at *9.  The *Bluetooth* indicators discussed above are instructive here, and counsel courts to assess the agreement for disproportionate distributions to counsel, a clear sailing agreement that provides payment of attorneys' fees separate from the class fund, and a reversion of unclaimed funds to the defendant.  *Id.* (citing *Bluetooth*, 654 F.3d at 947).

Here, Plaintiffs' counsel has requested up to one-third of the Settlement Fund in fees, in addition to up to $20,000 as reimbursement for costs and expenses.  (Dkt. No. 38 at 10.)[1]  While this exceeds the Ninth Circuit's established benchmark of 25% of the common fund for attorneys' fees, *see Hanlon*, 150 F.3d at 1029, this does not appear to be an obvious deficiency, as the Settlement Agreement leaves to this Court the ability to make a final determination of the amount awarded in attorneys' fees and expenses.  (Dkt. No. 38-1 (Settlement Agreement at ¶ 7.2)); *see also Champagne*, 2019 WL 13254284, at *9.

Furthermore, the Ninth Circuit has recognized that "special circumstances" may justify a departure from the 25% benchmark.  *See Bluetooth*, 654 F.4d at 942.  In similar data breach cases, this Court has recognized that nonmonetary relief provided in a settlement agreement such as free fraud resolution services provided to class members and commitments by defendant to implement security upgrades enhance the value of the settlement.  *See Anthem*, 327 F.R.D. at 319.

Here, Plaintiffs argue that the $1,410,000 value of the credit monitoring services and business security enhancements that Defendant has committed to pursuant to the Settlement Agreement more than doubles the value of the Settlement Fund, reducing the percentage allocated as attorneys' fees.  (Dkt. No. 38 at 10.)  Regardless of the specific dollar amount by which these nonmonetary benefits enhance the value of the Settlement Agreement and thereby reduce the percentage taken by Plaintiffs' counsel as fees, they may nonetheless constitute special circumstances explaining a departure from the 25% benchmark.

Additionally, the Settlement Agreement does not contain a clear sailing arrangement, as it

---

[1] Plaintiffs' counsel has thus far accrued a lodestar of approximately $281,536.40.  (*Id.*)

proposes that attorneys' fees be calculated as a percentage of the Settlement Fund.  Finally, any funds that remain in the Settlement Fund after claimants have received their out-of-pocket loss reimbursements and statutory CCPA reimbursements will be distributed to Settlement Class members on a *pro rata* basis rather than reverting to Defendant.  (Dkt. No. 38-1 (Settlement Agreement at ¶ 2.3.3)); *see also Champagne*, 2019 WL 13254284, at *9.

Accordingly, the Court finds that the Settlement Agreement contains no substantive deficiencies precluding preliminary approval.

### iii.    Lack of Preferential Treatment

This factor requires a court to determine if the settlement provides preferential treatment to any class member.  *Champagne*, 2019 WL 13254284, at *9.  Under the proposed Settlement Agreement, all Settlement Class Members may submit a claim for up to $5,000 for out-of-pocket expenses and losses.  (Dkt. No. 38 at 5.)  California Subclass Members may submit a claim for a $100 cash payment under the CCPA.  (*Id.* at 6.)  Finally, all Class members may submit a claim for a $100 cash payment, to be increased or decreased *pro rata* based on the funds remaining in the Settlement Fund.  (*Id.*)  All Class Members are also entitled to the non-monetary benefits provided by Defendant.  (*Id.* at 6-7.)

Plaintiffs further intend to request service awards of $2,000 each for the class representatives, subject to the approval of this Court.  (Dkt. No. 38-1 (Settlement Agreement at ¶ 7.3).)  "Incentive awards are fairly typical in class action cases."  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  The decision to approve such an award is within the court's jurisdiction.  *See in re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Incentive awards are generally designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as private attorney general."  *Rodriguez*, 563 F.3d at 958-959.  The Ninth Circuit recently reiterated that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).  Conflicts may arise where the "proposed service fees greatly exceed the payments to absent class

1    members." *Id.* at 1165.

2         The proposed Settlement Agreement provides that the amount of the service awards shall

3    be determined by this Court.  (Dkt. No. 38-1 (Settlement Agreement at ¶ 7.3).)  In this district,

4    incentive awards of $5,000 are presumptively reasonable.  *Villegas v. J.P. Morgan Chase & Co.*,

5    No. CV 09-00261, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012). Given the size of the

6    proposed service awards, which is presumptively reasonable in this district and is not

7    disproportionate to what Settlement Class Members may recover generally, as well as the effort

8    that class representatives have devoted to assisting this case, the court finds that the proposed

9    Settlement Agreement does not give preferential treatment to any class member.  The Court will

10   determine the exact amount of the service award at the final approval hearing.

11        **iv.    Range of Possible Approval**

12        Finally, the Court determines whether the proposed settlement falls within the range of

13   possible approval. "To evaluate the range of possible approval criterion, which focuses on

14   substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery

15   balanced against the value of the settlement offer."  *Harris*, 2011 WL 1627973, at *9 (internal

16   quotation marks and citation omitted).

17        Plaintiffs argue that, if they had prevailed at trial, they would have sought recovery for out-

18   of-pocket losses and the cost of obtaining credit monitoring, and that the Settlement Agreement,

19   which also provides identity theft protection and security enhancements, goes beyond "what Class

20   Members would be seeking on their best day in Court." (Dkt. No. 38 at 11.)  Relying on Federal

21   Trade Commission data, Plaintiffs note that the average out-of-pocket loss for identity theft

22   victims who suffered misuse of existing accounts is $500, while the average such loss for those

23   who have accounts improperly opened under their names is $1,200.  (*Id.*)  Furthermore, plaintiffs

24   note that only six and sixteen percent of those victims, respectively, suffered losses of $1,000 or

25   greater. While Plaintiffs' Federal Trade Commission data indicates that 85% of identity theft

26   victims report misuse of existing accounts and 17% report improperly opened accounts, Plaintiffs

27   anticipate that the claims rate in this case will be around 1-10% of the approximately 36,000

28   Settlement Class members.  (*Id.* at 9, 11.)  Plaintiffs thus contend that the $5,000 available to each

United States District Court
Northern District of California

18

1    Settlement Class member as reimbursement for out-of-pocket losses along with the *pro rata* cash

2    payments available to all Settlement Class members will likely make each class member whole,

3    even though there could be individual Settlement Class members who would attain greater

4    recovery at trial.  (*Id.* at 11.)

5         As for the 1,302 California Subclass members, Plaintiffs note that the CCPA would entitle

6    plaintiffs who prevail at trial to between $100 and $750 each (between $130,200 and $976,500 in

7    total), but that plaintiffs would only be entitled to the greater of actual or statutory damages.  (*Id.*

8    at 11 (citing Cal. Civ. Code § 1798.150(a)(1)(A)).)  Under the proposed Settlement Agreement,

9    California Subclass members would be eligible to receive $100 from funds remaining after out-of-

10   pocket expenses have been claimed, in addition to the credit monitoring and identity theft

11   protections and *pro rata* cash payments available to all Settlement Class members.  (*Id.*)

12        Plaintiffs further note the difficulty of prevailing in further complex and technical

13   litigation, despite their belief in the strength of their case.  (*Id.* at 19.)  They argue that each

14   plaintiff would have to establish harm and causation (which Defendant would contest), and that

15   fully litigating the case would present risks given the novelty of claims in data breach actions such

16   as this one, including "class certification, summary judgment, and trial."  (*Id.*)

17        Using Plaintiffs' cited Federal Trade Commission data, the Court estimates that total of the

18   average damages due to Settlement Class members who suffered misuse of existing accounts

19   would be $15.3 million, and the total of the average damages due to those who had accounts

20   improperly opened in their names would be $3.06 million.[2] However, "[t]he fact that a proposed

21   settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean

22   that the proposed settlement is grossly inadequate and should be disapproved."  *In re Yahoo! Inc.*

23   *Customer Data Sec. Breach Litig.*, 13-MD-02755, 2020 WL 4212811, at *14 (N.D. Cal. July 22,

24   2020) (quoting *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998)).  The

25   "very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest

26

27        ───────────────

         [2] Using Plaintiffs' estimated claims rate of 1-10%, the average damages claimed would

28   range from $180,000 to $1.8 million for the former group, and from $432,000 to $4.32 million for
     the latter.

United States District Court
Northern District of California

1

2

3

4

5

6

7

hopes." *Id.*  Particularly in light of "the risks and delays in proceeding to class certification, summary judgment, and/or trial," as well as additional non-monetary benefits such as credit monitoring and security enhancements designed to "rectify the harms suffered by Settlement Class members," this Court has approved similar settlements in data breach cases.  *Id.* at *10 (approving settlement fund of $117.5 million for a class of 194 million and noting approval in a different case in this district of a settlement fund of $115 million for a class of 79 million).  The settlement thus appears objectively fair and reasonable for the purposes of the preliminary fairness determination.

8

9

10

11

12

After the claims process is completed, the Court will be in a better position to fully assess the actual value of the settlement, and, at that time, "the parties and the Court will be in a position to accurately calculate the value of the settlement and compare it to the maximum damages recoverable." *Champagne*, 2019 WL 13254284, at *11 (quoting *Harris*, 2011 WL 1627973, at *14).  Thus, the Court will defer a final ruling on this issue until after the final approval hearing.

13

**3.  Class Notice Plan**

14

15

16

17

18

19

20

21

22

23

24

Under Rule 23(b)(3), class members must be afforded the best notice practicable under the circumstances, including individual notice to all members of the class who can be identified through reasonable effort.  The notice must clearly and concisely state the following in plain, easily understood language: (1) the nature of the action; (2) the definition of the class certified; (3) the claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5); that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).  In sum, "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and to be heard." *Churchill*,  361 F.3d at 575 (internal quotation marks omitted).

25

26

27

28

Here, the notice requirements will be satisfied if the parties make the below revisions to the class notices attached to the proposed Settlement Agreement.  As discussed above, the proposed Settlement Agreement provides for notice via email and/or physical mail. The Long Notice attached as Exhibit B to the proposed Settlement Agreement adequately explains the nature of the

United States District Court
Northern District of California

action, defines the proposed Settlement Class, explains the claims, issues, and defenses, explains that class members may retain their own attorney if they desire, explains the process, time, and manner for requesting exclusion, and explains the binding effect of a class judgment on Settlement Class members who fail to opt out of the settlement.  (Dkt. No. 38-1 (Settlement Agreement Ex. B at 3-10).)  However, the Short Notice attached as Exhibit C inadequately explains the nature of the action as well as the issues, claims, and defenses, and further fails to explain that a class member may enter an appearance through an attorney. (Dkt. No. 38-1 (Settlement Agreement Ex. C).)  The parties shall revise the Short Notice to cure these deficiencies.

### 4.  Attorneys' Fees

While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or by the parties' agreement under Rule 23(h), "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.  Courts have discretion to employ either the lodestar or the percentage of recovery method where a settlement produces a common fund for the benefit of the entire class.  *See In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010).

Here, Plaintiffs' counsel have accrued a lodestar of approximately $281,536.40, and request not more than one-third of the Settlement Fund as reimbursement for their fees.  (Dkt. No. 38 at 10.)  As discussed above, the benchmark for reasonable attorneys' fees in this district is 25%.  *Bluetooth*, 654 F.3d at 942.  Deviation from this benchmark is not necessarily sufficiently unreasonable to warrant rejecting the proposed Settlement Agreement at this stage, especially in light of the non-monetary benefits included in the Settlement Agreement.  *See Anthem*, 327 F.R.D. at 319.  However, because Plaintiffs' counsel's lodestar is closer to the 25% benchmark and seems unlikely to grow significantly in light of this preliminary approval, the Court elects to use the lodestar method for calculating attorneys' fees.

For the purposes of preliminary approval, the fee request is appropriate, but the Court defers its final ruling on the issue until the final approval hearing, at which the Court shall make a final determination of Plaintiffs' counsel's fee award pursuant to the Settlement Agreement.

United States District Court
Northern District of California

21

1   Plaintiffs' counsel shall submit a motion seeking approval of attorneys' fees with their updated

2   lodestar calculations within 60 days of the Notice Commencement Date.

3   **5. Costs**

4       An attorney who creates a common fund for the benefit of the class is entitled to

5   reasonable litigation fees.  *Ontiveros v. Zamorra*, 303 F.R.D. 356, 375 (E.D. Cal. 2014).  Courts in

6   this circuit regularly award litigation costs and expenses.  *See Smith v. Pac. Personnel Svcs., Inc.*,

7   No. 17-03594, 2018 WL 11437641, at *8 (N.D. Cal. Oct. 11, 2018) (collecting cases).  Here, the

8   Settlement Agreement caps Plaintiffs' counsel's costs and expenses at $20,000.  (Dkt. No. 38-1

9   (Settlement Agreement at ¶ 7.2).)

10      Counsel is instructed to submit an itemized sheet summarizing its costs with its motion for

11  attorneys' fees so that the Court can determine whether these costs are reasonable litigation

12  expenses incurred for the benefit of the class. For purposes of preliminary approval, the estimated

13  costs are appropriate, but the Court defers its final ruling on the issue until the final approval

14  hearing.

15  **CONCLUSION**

16      For the reasons stated above, the Court GRANTS the motion for preliminary approval of

17  the class action settlement as follows:

18      1.  The action is provisionally certified as a class for the purposes of settlement only,

19          pursuant to Federal Rule of Civil Procedure 23.

20      2.  The settlement classes are defined as followed:

21          a.  The Settlement Class is defined as all persons identified by Defendant (or

22              its agents or affiliates) as being among those individuals impacted by the

23              Data Incident, including all who were sent a notice of the Data Incident.

24          b.  The California Subclass is defined as all persons identified by Defendant (or

25              its agents or affiliates) as being individuals residing in California impacted

26              by the Data Incident, including all who were sent a notice of the Data

27              Incident.

28      3.  Certification of the settlement class shall be solely for the purposes of settlement

United States District Court<br>Northern District of California

United States District Court
Northern District of California

without prejudice to the parties in the event the settlement is not finally approved by the Court or otherwise does not take effect.

4.  The Court appoints:

    a.  M. Anderson Berry and Gregory Horoutunian of Clayeo C. Arnold, APC; Dylan J. Gould and Jonathan T. Deters of Markovits, Stock & DeMarco, LLC; Samuel J. Strauss; Raina Borrelli, and Brittany Resch of Turke & Strauss LLP; Jean S. Martin of Morgan & Morgan Complex Litigation Group; and John J. Nelson of Milberg Coleman Bryson Philips Grossman LLC as Class Counsel;

    b.  Plaintiffs Christopher Stein, Josephine Dibisceglia, John Blumenstock, Thomas Rosello, Jeffrey Branch, Derrick Carter, Trevor Pearch, James Schneider, and Tameka Young as Class Representatives for settlement purposes only on behalf of the Settlement Class; and

    c.  Kroll Settlement Administration, LLC, as the Claims Administrator.

5.  The Short Notice shall be revised in accord with the Court's comments above, after which notice shall be provided in accordance with the notice plan as set forth in the Settlement Agreement;

6.  The date by which Settlement Class members' objections to the Settlement must be postmarked by mailing them to the Court (the "Objection Date") shall be November 20, 2023.

7.  The date by which Settlement Class Members' requests for exclusion from the Settlement Class must be postmarked by mailing them to the Claims Administrator (the "Opt-Out-Date") shall be November 20, 2023.

8.  The date by which Settlement Class members must submit any valid Settlement Claims shall (the "Claims Deadline") shall be December 20, 2024.

9.  On January 22, 2024 at 9:30 A.M., the Court shall conduct the final approval hearing.  Class Counsel shall file a noticed motion for final approval of the settlement no later than 35 days before the final approval hearing.  Class Counsel

shall file a motion seeking approval of attorneys' fees and costs and the proposed

incentive awards within 60 days after the Notice Commencement Date.

10. Class members and their counsel may appear at the final approval hearing to

support or oppose the settlement and the motion for an award of attorneys' fees and

costs, and the Class Representatives' service payments.  For any written comments

or objections to be considered at the hearing, the class member must submit a

written objection to the Claims Administrator in compliance with the instructions in

the class notice and describe the nature of the class member's comments, support,

or objection.  Written comments or objections to the settlement or to the attorneys'

fees and costs must be postmarked no later than 45 days after the mailing of the

class notice.

11. The parties shall amend the proposed Settlement Agreement to provide that Class

Counsel shall be responsible for a post-distribution accounting of the Settlement

Fund. $50,000 of Class Counsel's approved fee shall be held pending submission

of the post-distribution accounting.

**IT IS SO ORDERED**.

Dated: August 8, 2023

SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California