John J. Nelson (SBN 317598)
jnelson@milberg.com
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
402 W Broadway, Suite 1760
San Diego, CA 92101
T: (858) 209-6941

*Attorneys for Plaintiffs' and the Proposed Class*

[Additional Counsel Listed on Signature Page]

# THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: ETHOS TECHNOLOGIES INC. DATA BREACH LITIGATION**<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 3:22-cv-09203-SK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date:   January 22, 2024<br>Hearing Time:   9:30 a.m.<br>Judge:   Magistrate Judge Sallie Kim |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 22, 2024, at 9:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom C, 15th Floor of the United States District Court for the Northern District of California, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Magistrate Judge Sallie Kim, presiding, Plaintiffs Christopher Stein, Josephine Dibisceglia, John Blumenstock, Thomas Rossello, Jeffry Branch, Derrick Carter, Trevor Pearch, James Schneider, and Tameka Young (collectively "Plaintiffs") hereby do and will move the Court an Order for final approval of the Settlement and certification of the Settlement Class pursuant to Rules 23(e) and 23(b)(3) of the Federal Rules of Civil Procedure ("Rule(s)").[1]

In so moving, Plaintiffs respectfully request the Court: (1) approve the Settlement Agreement as fair, reasonable, and adequate under Rule 23(e); (2) finally certify the Settlement Class under Rule 23(b)(3); (3) finally appoint Plaintiffs as Class Representatives for the Settlement Class; (4) finally appoint as Settlement Class Counsel M. Anderson Berry, Gregory Haroutunian, Dylan J. Gould, Jonathan T. Deters, Samuel J. Strauss, Raina Borrelli, Brittany Resch, Jean S. Martin, and John J. Nelson; and (5) find the Notice Program as implemented satisfies Rule 23 and due process.

This motion is based upon this Motion, the Memorandum of Points and Authorities, the accompanying Declaration of M. Anderson Berry ("Berry Decl."), the Declaration of Scott M. Fenwick and all exhibits attached thereto, pleadings on file in this Action, and other such matters and argument as the Court may consider at the hearing on this motion.

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Amended Settlement Agreement, ECF No. 40-1.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-2-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...........................................................................................1

II.   STATEMENT OF FACTS...........................................................................2

III.  PROCEDURAL HISTORY ........................................................................3

IV.   THE SETTLEMENT TERMS .....................................................................3

A.   The Settlement Class............................................................................. 3

B.   Settlement Benefits ............................................................................... 4

  1.  Settlement Fund............................................................................. 4

  2.  Monetary Relief............................................................................. 5

    a.  Reimbursement for Out-of-Pocket Losses ............................. 5

    b.  California Cash Payment ......................................................... 6

    c.  *Pro Rata* Cash Payment ......................................................... 6

    d.  Credit Monitoring and Identity Theft Protection Benefit ...... 6

C.   Business Practices Enhancements, Monetary Investment and Data Security..................... 7

D.   Class Notice and Settlement Administration ......................................... 8

E.   Attorneys' Fees and Expenses and Service Award to Plaintiff ............ 9

F.   Release ................................................................................................ 10

V.   CLAIMS, REQUESTS FOR EXCLUSION AND OBJECTIONS ............10

VI.   LEGAL ARGUMENT...............................................................................11

A.   The Court Should Certify the Class for Settlement Purposes............... 11

  1.  The Rule 23(a) Requirements Are Met for Purposes of Settlement ............... 11

  2.  The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement ................... 13

B.   The Court Should Finally Approve the Settlement............................... 15

  1.  The Strength of Plaintiffs' Case ................................................. 16

  2.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation................ 16

  3.  The Risk of Maintaining Class Action Status Through Trial........................ 17

  4.  Amount Offered in Settlement ................................................... 18

  5.  The Extent of Discovery Completed and the Stage of Proceedings ............................. 20

  6.  The Experience and Views of Counsel ....................................... 21

  7.  The Reaction of the Class Members to the Proposed Settlement .................................. 21

  8.  Lack of Collusion among the Parties ......................................... 21

  9.  The Settlement Treats Settlement Class Members Equitably ....................... 22

1

VII.    CONCLUSION ............................................................................................................23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997).................................................................................11, 14

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018)........................................................15

*Atkinson et al. v. Minted, Inc.*,
   No. 3:20-cv-03869 (N.D. Cal.) ECF No. 71 ..................................10, 19

*Atkinson v. Minted, Inc.*,
   No. 3:20-cv-03869-VC, 2021 U.S. Dist. LEXIS 244257 (N.D. Cal. Dec. 17,
   2021) ...............................................................................................19

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...........................................................15

*In re Brinker Data Incident Litig.*,
   2021 WL 1405508 (M.D. Fla., Apr. 14, 2021).................................18

*Calderon v. Wolf Firm*,
   2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) ..................................20

*Capaci v. Sports Rsch. Corp.*,
   2022 WL 1133818 (C.D. Cal. Apr. 14, 2022) ..................................13

*Chester v. TJX Cos.*,
   2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ....................................16

*Chua v. City of L.A.*,
   2017 WL 10776036 (C.D. Cal. May 25, 2017) ................................14

*Cochran, et al. v. Kroger Co.*,
   5:21-cv-01887 (N.D. Cal.) ECF Nos. 108 .......................................10

*Corona v. Sony Pictures Entertainment, Inc.*,
   No. 2:14-cv-9600 (C.D. Cal.) ECF Nos. 145-1 & 164 .....................10

*Dennis v. Kellogg Co.*,
   2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ..................................16

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ......................................................11, 12

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

*In re Equifax Customer Data Sec. Breach Litig.*,
   2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020)......................................19

*Forcellati v. Hyland's, Inc.*,
   2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) .......................................12

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989) ...............................................................................16

*In re Google LLC St. View Elec. Communs. Litig.*,
   2020 WL 1288377 (N.D. Cal. Mar. 18, 2020).......................................................12

*Green-Cooper v. Brinker Int'l, Inc.*,
   73 F.4th 883 (11th Cir. 2023) ................................................................................18

*Grimm v. Am. Eagle Airlines, Inc.*,
   2014 WL 12746376 (C.D. Cal. Sep. 24, 2014).......................................................18

*Gupta v. Aeries Software, Inc.*,
   No. SA CV 20-0995 FMO, 2023 U.S. Dist. LEXIS 36141 (C.D. Cal. Mar. 3,
   2023) ......................................................................................................................19

*Hanlon v. Chrysler Corp*,
   150 F.3d (9th Cir. 1998) ........................................................................................13

*Hellyer v. Smile Brands Inc.*,
   No. 8:21-cv-01886-DOC-ADS, 2023 U.S. Dist. LEXIS 137295 (C.D. Cal.
   Aug. 4, 2023) .........................................................................................................19

*Hillman v. Lexicon Consulting, Inc.*,
   2017 WL 10434013 (C.D. Cal. Oct. 12, 2017).......................................................20

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ...............................................................................12

*Keegan v. Am. Honda Motor Co*,
   284 F.R.D. 504 (C.D. Cal. 2012) ...........................................................................14

*In re LinkedIn User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015)............................................................................15

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .........................................................................17, 20

*Longest v. Green Tree Servicing LLC*,
   308 F.R.D. 310 (C.D. Cal. 2015)............................................................................12

*In re Marriott Int'l Customer Data Sec. Breach Litig.*,
   No. 19-MD-2879, 2023 WL 8247865 (D. Md. Nov. 29, 2023) .............................18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-iv-

*In re Marriott Int'l, Inc.*,
    78 F.4th 677 (4th Cir. 2023) ...................................................................................18

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    341 F.R.D. 128 (D. Md. 2022)................................................................................18

*In re MRV Communs., Inc. Derivative Litig.*,
    2013 WL 2897874 (C.D. Cal. June 6, 2013) .........................................................18

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...........................................................................21

*Paz v. AG Adriano Goldschmeid, Inc.*,
    2016 WL 4427439 (S.D. Cal. Feb. 29, 2016) ........................................................17

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    2019 WL 3410382 (D. Or. July 29, 2019)..............................................................11

*Reynoso v. All Power Mfg. Co.*,
    2018 WL 5906645 (C.D. Cal. Apr. 30, 2018) ........................................................13

*Smith v. Triad of Ala.*,
    2017 WL 1044692 (M.D. Ala. Mar. 17, 2017)........................................................18

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
    No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573 (N.D. Ohio Aug. 12,
    2019) ......................................................................................................................19

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ...........................................................................................14

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
    266 F. Supp. 3d 1 (D.D.C. 2017), *reversed in part*, 928 F.3d 42 (D.C. Cir.
    June 21, 2019) .........................................................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).................................................................................................11

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ................................................................................13

**Rules**

4 Newberg on Class Actions, § 11:48 (4th ed. 2002) ...................................................21

Fed. R. Civ. P. 23 ............................................................................................................11

Fed. R. Civ. P. 23(a) ...................................................................................................11, 13

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-v-

Fed. R. Civ. P. 23(a)(1) ........................................................................................................11

Fed. R. Civ. P. 23(a)(3) ........................................................................................................12

Fed. R. Civ. P. 23(a)(4) ........................................................................................................12

Fed. R. Civ. P. 23(b)(1) ........................................................................................................13

Fed. R. Civ. P. 23(b)(3) ..................................................................................................13, 14

Fed. R. Civ. P. 23(e) .......................................................................................................15, 22

Fed. R. Civ. P. 23(e)(2)(D) ...................................................................................................22

Fed. R. Civ. P. 408 ...............................................................................................................20

Fed. Rule of Evidence 408 ......................................................................................................3

**Other Authorities**

Manual for Complex Litig. § 21.632 (4th ed. 2004) ...............................................................11

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-vi-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     **INTRODUCTION**

Plaintiffs Christopher Stein, Josephine Dibisceglia, John Blumenstock, Thomas Rossello, Jeffry Branch, Derrick Carter, Trevor Pearch, James Schneider, and Tameka Young (collectively "Plaintiffs"), through their undersigned counsel, respectfully move this Court for entry of an order granting final approval to the settlement memorialized in the Settlement Agreement ("SA") (ECF No. 38-1), that, subject to the Court's approval, will resolve this class action lawsuit. The Court preliminarily approved the settlement on August 8, 2023 (ECF No. 42) (the "Order"). The parties filed the Settlement Agreement ("SA") (ECF No. 38-1) together with Plaintiffs' Unopposed Motion for Preliminary Approval (ECF No. 38) on June 23, 2023. At the August 8, 2023, hearing on Plaintiffs' Motion for Preliminary Approval of Class Action Settlement the Court granted preliminary approval. Notice was issued to the preliminarily certified Settlement Class as directed by the Court in the Order. ECF No. 42 at 14, SA § 3.[2]

This settlement—which makes available to every Settlement Class Member considerable monetary relief, credit monitoring and identity protections services through Experian and programmatic relief—represents an excellent resolution of this high-risk, complex litigation. The parties also worked diligently and cooperatively to deliver the best Notice practicable to the Settlement Class. Indeed, the Settlement Agreement provides for a reminder notice to be sent to all Settlement Class Members fourteen (14) days prior to the Claims Deadline. SA, ¶ 3.3(g) and for the dissemination of the Short Notice in a general publication that reaches the entire United States, such as PR Newswire. *Id.*, ¶ 3.3(f).

The Claims Deadline is December 20, 2023, and the Objection and Opt-Out Deadline was November 20, 2023. SA, ¶ 20. Therefore, the true reaction of the Settlement Class cannot yet be

---

[2] Capitalized terms have the same definitions as in the Settlement Agreement.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

known. However, thus far, the reaction of the Settlement Class has been overwhelmingly positive. With the exclusion and objection deadline long since passed, in response to 34,711 notices, **no** objections have been filed and **no** Class Members have requested exclusion from this settlement. Furthermore, while the Claims Deadline has not yet passed 3,117 claims have already been received by the Claims Administrator, representing an impressive 8.8% claims rate.

The settlement undoubtedly is fair, reasonable, and adequate, as the Court preliminarily found in its Order. This Court should now finally certify the Settlement Class for settlement purposes only, and finally approve the settlement as fair, reasonable, and adequate.

## II.    STATEMENT OF FACTS

In December 2022, Ethos Technologies Inc. ("Ethos") notified approximately 33,985 individuals of the Data Incident. ¶ 10.[3] Plaintiffs brought this action on behalf of all persons whose PII Plaintiffs allege was compromised by Ethos's failure to: (i) adequately protect PII; (ii) warn of its inadequate information security practices; and (iii) effectively monitor its network for security vulnerabilities and incidents. Plaintiffs allege that Ethos's conduct amounts to negligence, invasion of privacy, unjust enrichment, and violates federal and state statutes. ¶ 18. Plaintiffs, through their class action lawsuit, allege that they and Class Members have suffered injury as a result of Ethos's conduct, including: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Incident, including but not limited to lost time, (iv) loss of the benefit of their bargain with Defendant; (v) lifetime risk of identity theft and the associated harms and damages therewith; and (vi) the continued and certainly increased risk to their PII, which remains in Ethos's possession

---

[3] "¶" references refer to the Consolidated Class Action Complaint, ECF No. 25.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-2-

and is subject to further unauthorized disclosures so long as Ethos fails to undertake appropriate and adequate measures to protect the PII. ¶¶ 100-113.

### III.  PROCEDURAL HISTORY

On December 30, 2022 Plaintiff Stein filed the first lawsuit asserting claims against Ethos relating to the Data Incident (the "Litigation"). Over the next several weeks several other complaints were filed against Ethos by Plaintiffs asserting similar claims arising out of the Data Incident.  On January 18, 2023 this Court related the cases that had been filed as of that date and on January 31, 2023 the Court ordered they be consolidated. Over the course of several months, Plaintiffs' counsel continued to investigate the facts of the Data Incident, and the Parties engaged in informal discovery, leading to informed settlement negotiations. Declaration of M. Anderson Berry in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Berry Decl."), ¶ 8. The parties agreed to participate in early mediation. *Id*. The Parties exchanged Fed. Rule of Evidence 408 informal discovery and engaged Hon. Wayne R. Andersen (Ret.) of JAMS, a well-regarded private mediator and retired Federal judge with considerable experience mediating data breach class actions, to preside over the mediation. After spending considerable time and effort negotiating, the Parties were not able to reach a settlement. Judge Andersen later sent a mediator's proposal to the parties, which they subsequently accepted. *Id.* The Parties then spent the next several weeks finalizing the full scope of the Settlement, executing the Settlement Agreement on June 23, 2023. *Id.,* ¶ 9. Plaintiffs then moved for Preliminary Approval on June 23, 2023, which this Court granted on August 8, 2023. *See* ECF No. 42.

### IV.  THE SETTLEMENT TERMS

#### A.  The Settlement Class

The settlement will provide relief for the following Settlement Class: "all persons identified

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-3-

by Defendant (or its agents or affiliates) as being among those individuals impacted by the Data Incident, including all who were sent a notice of the Data Incident." SA, ¶ 1.30. The following persons are excluded from the class definition: "(i) Defendant and its respective officers and directors; (ii) the Judge assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge. *Id*. The Court granted provisional certification of the Settlement Class for settlement purposes only in its Order. ECF No. 42.

The settlement also provides additional relief for the following California Subclass: "[a]ll persons identified by Defendant (or its agents or affiliates) as being among those individuals residing in California impacted by the Data Incident, including all who were sent a notice of the Data Incident." SA, ¶ 1.33. The California Subclass specifically excludes: "(i) Defendant and its respective officers and directors; (ii) the Judge assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge *Id*. The Court granted provisional certification of the California Subclass for settlement purposes only in its Order. ECF No. 42.

**B.  Settlement Benefits**

**1.  Settlement Fund**

The Settlement provides for the creation of a non-reversionary cash settlement fund of $1,000,000, which will be used first to pay all approved attorneys' fees and expenses, the approved costs of settlement administration and notice, and any approved service awards. The remaining funds will then be applied until exhausted in the following order: (1) to claims for out-of-pocket loss reimbursement up to $5,000 per valid claim, (2) cash payments to California Subclass members

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-4-

up to $100 per valid claim, and (3) *pro rata* cash payments of money remaining in the Settlement Fund to all individuals who submitted a Valid Claim. SA, ¶¶ 1.32, 2.3. Separate from and outside of the Settlement Fund, Defendant will provide one year of Credit Monitoring and Identity-Protection Services and Business Practice Commitments. *Id.*, ¶¶ 2.4, 2.5.

### 2. Monetary Relief

The Settlement provides for (1) reimbursement of Out-of-Pocket Losses up to $5,000 per Settlement Class Member; (2) an additional cash payment of $100 to California Subclass Members who submit a valid and timely Claim Form; and (3) a *pro rata* cash payment of $100, which shall be increased or decreased based on the funds remaining in the Settlement Fund following the payment of Attorneys' Fees and Expenses Awards, any Service Awards approved by this Court, the costs of Claims Administration, claims for Out-of-Pocket Losses, and the CCPA payments. *Id.*, ¶¶ 2.3.

### a. Reimbursement for Out-of-Pocket Losses

The first category of payments reimburses Settlement Class Members up to $5,000 upon submission of a valid and timely Claim Form and supporting documentation for any Out-Of-Pocket Losses fairly traceable to the Data Incident. Such losses can arise from several categories of expenses, fees, and lost time including unreimbursed costs, expenses, losses, or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of a Settlement Class Member's Social Security number; unreimbursed costs incurred on or after August 4, 2022, associated with accessing or freezing/unfreezing credit reports with any credit reporting agency; other unreimbursed miscellaneous expenses incurred related to any Out-of-Pocket Expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges; other mitigative costs that were incurred on or after August 4, 2022, through the date of the Settlement

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-09203-SK

-5-

Class Member's submission; and unpaid time off work to address issues fairly traceable to the Data Incident at the actual hourly rate of that Settlement Class. *Id.*, ¶ 2.3.1.

### b.  California Cash Payment

The second category of monetary payment to the Class is available to all California Subclass Members. All California Subclass Members who submit a Valid Claim are eligible to receive a payment of $100 as a result of the CCPA claim they have brought against Defendant as California residents. The CCPA Payment is in addition to any other settlement benefits available. The CCPA payment may be *pro rata* decreased if insufficient funds remain in the Settlement Fund following the payment of Attorneys' Fees and Expenses awarded, any Service Awards, the Costs of Claims Administration, and Claims for Out-of-Pocket losses. *Id.*, ¶ 2.3.2.

### c.  *Pro Rata* Cash Payment

The third category of monetary payment to the Class is available to all Settlement Class Members. Settlement Class Members who submit a Valid Claim are eligible to receive a $100 payment. The amount of this benefit shall be increased or decreased based on the funds remaining in the Settlement Fund following the payment of all other benefits and costs described above. *Id.*, ¶ 2.3.3.

### d.  Credit Monitoring and Identity Theft Protection Benefit

In addition to the cash benefits, Ethos has agreed to provide Settlement Class Members credit monitoring and identity-theft protection, through Experian Monitoring Services, for a period of 12 months from the date a member of the Settlement Class claims such offer. *Id.*, ¶ 2.4. Such services shall be added consecutively to any credit monitoring services that a class member has already received from Ethos as a result of the Data Incident. *Id.* These services include the following features: (i) identity theft insurance (with a $1,000,000 policy limit); (2) real-time credit monitoring

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-6-

services; and (3) access to fraud resolution agents. *Id.* The activation codes for these services were included in the Short Notice. Berry Decl. ¶ 16. These services are offered, at retail, to consumers on Experian's website at a price of $24.99 per month, or $299.88 per year, per person. *Id.,* ¶ 17.

### C.    Business Practices Enhancements, Monetary Investment and Data Security

Defendant has taken and has agreed to continue to undertake certain reasonable steps to secure personal information within its platform, including its online insurance application process. As part of those efforts Ethos agreed that it has taken or will take the following measures at its own separate costs: (1) embed security engineers into product engineering teams to review code changes that may impact PII and assess potential security implications of the code development process before code is launched; (2) use mechanisms to block suspicious website traffic, including by configuring Ethos's firewalls to block traffic from IP addresses exhibiting suspicious traffic patterns (e.g., abnormally repetitive quote requests from the same IP address); (3) use reCAPTCHA logging or similar technologies to block automated use of its systems; (4) use a third-party security auditor/penetration testers as well as internal security personnel to conduct penetration tests and audits on Ethos's systems on a periodic basis, and address any problems or issues detected thereby on a risk-prioritized basis; (5) periodically audit, test, and train Ethos's security personnel regarding new or modified procedures corresponding with their job responsibilities; (6) conduct periodic computer system scanning and security checks; and (7) conduct periodic internal training and education to inform Ethos employees about the company's security practices. SA, ¶ 2.5. Defendant has committed to keep all of the above practices in place for at least three (3) years following the date the Court approves the settlement. *Id.*

Plaintiffs and Class Members have and will continue to receive a benefit from business practice changes made in response to this case that are aimed at preventing further unauthorized

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-7-

access to their sensitive PII in Defendant's hands. Ethos has engaged in substantial and significant business practice changes in response to this case that have resulted in substantial and significant expenses to Ethos, expenses that will continue for years to come. Ethos has estimated that such security enhancements are valued at $470,000 per year, or $1,410,000 through the end of the three-year commitment period. Berry Decl., ¶ 19.

### D.    Class Notice and Settlement Administration

The parties agreed to the appointment of Kroll Settlement Administration LLC ("Kroll") as Claim Administrator, and Kroll has spent $96,715.12 and estimates that it will spend $29,000 more on this matter. *See* Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Final Approval of Class Action Settlement ("Fenwick Decl."), ¶ 20.

Kroll sent the Short Notice by first class mail to 35,593 Settlement Class Members and sent the Short Notice via email to the eleven (11) email addresses Ethos was able to provide it as well. Fenwick Decl., ¶¶ 10-11. Of the 35,604 Short Notices Kroll sent to the Settlement Class, 353 were returned by the USPS with a forwarding address of which 341 were automatically re-mailed to the updated addresses by the USPS with the remaining 12 re-mailed by Kroll. *Id.*, ¶ 13. 1,973 Short Notices were returned by the USPS as undeliverable as addressed without a forwarding address, but Kroll was able to identify updated addresses for 1,285 of those. *Id.*, ¶ 14. Unfortunately, 194 of those were returned as undeliverable a second time. *Id*. As a result of the above the Short Notice reached 34,711 of the 35,593 Settlement Class members to whom the Short Notice was mailed, equating to a reach rate of 97.51%. *Id.*, ¶ 15.

Kroll also issued a press release over PR Newswire's US1 Newslines. PR Newswire distributes to thousands of print and broadcast newsrooms nationwide, as well as websites, databases and online services. As a result of this press release there were over 390 news mentions

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-8-

of the settlement. *Id.*, ¶ 12.

Kroll also created a dedicated Settlement Website entitled www.ethossettlement.com which went live on September 5, 2023 and contains a summary of the settlement, frequently asked questions, settlement documents including the Settlement Agreement, Preliminary Approval Order, Long Notice, Claim Form, and the Consolidated Class Action Complaint, and allowed Settlement Class Members an opportunity to file a Claim Form Online. *Id.*, ¶ 5. Kroll also established a toll-free telephone number with Interactive Voice Response which, as of December 12, 2023, has received 255 calls and 147 of those callers have been connected to live operators. *Id.*, ¶ 6.

Kroll sent a reminder Notice to the Settlement Class on December 6, 2023, 14 days before the Claims Deadline. SA, ¶ 3.3(g).

### E.     Attorneys' Fees and Expenses and Service Award to Plaintiff

Under the terms of the Settlement Agreement, Class Counsel was entitled to move the Court for an award of their reasonable attorneys' fees incurred in the Action in an amount not to exceed one-third (1/3) of the Settlement Fund, and reimbursement of costs and expenses of an amount not to exceed $20,000. *Id.,* ¶ 7.2. Despite this, Class Counsel only requested an attorneys' fee award of $300,000, which represented a negative multiplier of 0.76 on Class Counsel's lodestar as of the filing of the Motion for Attorneys' Fees and therefore does not even account for all subsequent work by Class Counsel, including the preparation of this motion. *See* ECF No. 43. While Class Counsel's requested fee is 30% of the Settlement Fund, it is only 12.4% of the benefits made available to the Class, once the $1,410,000 Ethos committed to spend on its Business Practice Commitments is added to the $1,000,000 cash Settlement Fund, and an even smaller percentage once the value of the Credit Monitoring and Identity-Protection Services Benefit of $299.88 per Class Member who enrolls is taken into account. Berry Decl., ¶ 17. Class Counsel has also incurred

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-09203-SK

-9-

a total of $16,416.57 in litigation expenses for which they are seeking reimbursement. ECF No. 43. Finally, each Plaintiff requests the Court grant their request for service awards of $2,000 for each Plaintiff, for a total of $18,000, in light of their commitment to and risks in pursuing the litigation on behalf of the class. *See Id.*, Plaintiff Declarations, ECF Nos. 47-54.

### F.    Release

Upon entry of the Final Approval Order, Plaintiff and the Settlement Class will be deemed to "have, fully, finally, and forever released, relinquished, and discharged all Released Claims." SA, ¶ 6.1.[4] Released Claims include Unknown Claims (*see id.*, ¶ 1.38), but do not include the claims of individuals who have timely excluded themselves from the Settlement Class. *Id.*, ¶ 1.26.

## V.    CLAIMS, REQUESTS FOR EXCLUSION AND OBJECTIONS

The deadline to object or opt-out was November 20, 2023. Fenwick Decl., ¶ 18. As of the filing of this motion, in response to 35,393 direct postcard and 11 email notices, no objections have been filed and no one has requested exclusion. *Id.*, ¶ 15, 19. The Claims Deadline does not expire until December 20, 2023. Nevertheless, as of December 15, 2023, the Claims Administrator has received 1,896 paper claims and 1,221 electronic claims through the Settlement Website, for a total of 3,117 claims. *Id.*, ¶ 16. The Claims Administrator is still in the process of reviewing and validating Claim Forms. *Id.* The 3,117 claims received so far results in a claims rate of 8.8%, which is at the very high end of the range of claims rates in other data breach class action settlements within this Circuit. *See*, *Corona v. Sony Pictures Entertainment, Inc.,* No. 2:14-cv-9600 (C.D. Cal.) ECF Nos. 145-1 at 11 n.8 & 164 at 2 (Claims rate of 0.7%); *Cochran, et al. v. Kroger Co.,* 5:21-cv-01887 (N.D. Cal.) ECF Nos. 108 at 4-6 & 108-1, ¶ 4 (Claims rate of 2.1%); *Atkinson et al. v. Minted, Inc.,* No. 3:20-cv-03869 (N.D. Cal.) ECF No. 71 at 4 (Claims rate of 3.5%).

---

[4] "Released Claims" are defined at SA, ¶ 1.26.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-10-

Kroll will continue to receive, review, cure, and validate claims that are timely received through the December 20, 2023, postmark deadline.

## VI.    LEGAL ARGUMENT

### A.  The Court Should Certify the Class for Settlement Purposes

Before assessing the parties' settlement, the Court should first confirm the underlying Settlement Class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litig. § 21.632 (4th ed. 2004). The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). The Court found the Settlement Class met these requirements in its Order and provisionally certified the Settlement Class for settlement purposes. ECF No. 42. Plaintiffs respectfully submit the Court's original assessment was correct and it should now certify the Settlement Class for settlement purposes.

#### 1.   The Rule 23(a) Requirements Are Met for Purposes of Settlement

The Settlement Class includes approximately 35,985 individuals (SA, p. 1); therefore, it readily satisfies the numerosity requirement. *See* Fed. R. Civ. P. 23(a)(1). The Class also satisfies the commonality requirement, which requires class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, courts in the Ninth Circuit have found that these common issues all center around Defendant's alleged misconduct, and in particular, satisfying the commonality requirement. *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *10 (D. Or. July 29, 2019). For the same reason, predominance is readily met "where

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-11-

the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Communs. Litig.*, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)). Thus, common questions include, among many, whether Defendant engaged in the wrongful conduct alleged; whether Class Members' PII was compromised during the Data Security Incident; whether Defendant owed a duty to Plaintiffs and Class Members and breached its duty; and whether Defendant unreasonably delayed notifying Plaintiffs and Class Members of the material facts of the Data Security Incident.

Typicality and adequacy are also easily met for purposes of settlement. Plaintiffs' claims are typical of the proposed Class because they are based on Defendant's alleged failure to protect Plaintiffs' and Class Members' PII and are therefore "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Forcellati v. Hyland's, Inc.*, 2014 U.S. Dist. LEXIS 50600, at *31 (C.D. Cal. Apr. 9, 2014) (finding plaintiffs' claims were reasonably co-extensive with those of absent class members). Plaintiffs allege that their PII was compromised, and that Defendant's same alleged poor data security practices caused them the same injury that the Class suffered. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

Plaintiffs are also adequate class representatives because (1) there are no antagonistic or conflicting interests between Plaintiffs and their counsel and the absent Class Members; and (2) Plaintiffs and their counsel will vigorously prosecute the action on behalf of the Class. Fed. R. Civ. P. 23(a)(4); *see also Ellis,* 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp*, 150 F.3d, 1011, 1020 (9th Cir. 1998); *Longest v. Green Tree Servicing LLC,* 308 F.R.D. 310, 325 (C.D. Cal. 2015). Plaintiffs have no conflicts of interest with other class members, are not subject to unique defenses,

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-09203-SK

-12-

and they and their counsel have and continue to vigorously prosecute this case on behalf of the Class. Plaintiffs are members of the Class who have experienced the same injuries and seek, like other Class Members, compensation. As such, Plaintiffs' and the Proposed Class Counsel's interests align with those of the Class. Further, Class Counsel have decades of combined experience as class action advocates and are well suited to litigate on behalf of the Class. *See* Declaration of M. Anderson Berry In Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 38-2) at Exhibits A-E. Thus, Plaintiffs will adequately protect the interests of the Class.

### 2.    The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement

In addition to meeting the conditions imposed by Rule 23(a), parties seeking class certification must also show that the action is maintainable under FRCP 23(b)(1), (2) or (3). *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any individual questions and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Hanlon,* 150 F.3d at 1022.

Common questions of law and fact predominate over individualized questions. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Capaci v. Sports Rsch. Corp.*, 2022 WL 1133818, at *9 (C.D. Cal. Apr. 14, 2022) (citing *Amchem Prods.*, 521 U.S. at 623). Courts analyze whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member. *Reynoso v. All Power Mfg. Co.*, 2018 WL 5906645, at *3 (C.D. Cal. Apr. 30, 2018) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). If, to make a prima facie showing on an issue, plaintiffs will need to present evidence that varies from one class member

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-13-

to the next, then the issue raises an individual question. *Chua v. City of L.A.*, 2017 WL 10776036, at *9 (C.D. Cal. May 25, 2017). If the same evidence can suffice for each member of the class on an issue, then it becomes a common question. *Id.* (citing *Tyson Foods, Inc.*, 136 S. Ct. at 1045) (internal quotations and citation omitted). Courts in the Ninth Circuit find predominance where there is a sufficient constellation of common issues that binds class members together. *Keegan v. Am. Honda Motor Co*, 284 F.R.D. 504, 545 (C.D. Cal. 2012).

Plaintiffs' claims depend, first and foremost, on whether Defendant used reasonable data security measures to protect PII. That question can be resolved using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc.* 136 S. Ct. at 1045 ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) …'") (citation omitted).

Rule 23(b)(3) requires that a "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy" and is intended to cover cases "in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Four factors are pertinent to this inquiry: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). Here, class treatment of Plaintiffs' and the Class's claims is superior to individual actions because a class action will be more efficient and conserve costs, time, and effort. The relatively

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-14-

minor amount of damages traceable to each Class member on an individual basis would not justify the pursuit of separate lawsuits across the country. Additionally, a class action is the superior method of adjudicating consumer claims arising from the Data Security Incident—just as in other data breach cases where class-wide settlements have been approved. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Further, the Class consists of thousands of individuals who, should they be required to bring individual cases, would submit identical factual evidence regarding Defendant's liability and seek redress for the same types of injuries, yet risk having different outcomes, even though their claims arise out of the same conduct and the same Data Security Incident. All these considerations demonstrate the superiority of a class action here.

## B. The Court Should Finally Approve the Settlement

Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). For a proposed class action to be approved, the Court must determine, after a hearing, that it is fair, adequate, and reasonable. The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant (not applicable here); (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Each of these factors weighs in favor of approval here.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-15-

In applying these factors, the guiding principle for courts remains that settlements of class actions are preferable. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

### 1.     The Strength of Plaintiffs' Case

Plaintiffs believe they have a strong case for liability. In particular, all Plaintiffs believe ample evidence will establish that Defendant failed to maintain reasonable data security practices, which led directly to the loss of Plaintiffs' and the Class's PII. Berry Decl., ¶ 22. Moreover, Plaintiffs believe that once they establish that Defendant's data security measures were inadequate, Defendant is likely to be found liable under at least some of the theories of liability pled in the Complaint. *Id.*, ¶ 23. However, Plaintiffs' success is not guaranteed. The actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication. *Id.*, ¶ 24; *see also Dennis v. Kellogg Co.*, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the challenges and inherent risks Plaintiffs face with respect to the novel claims characteristic of data breach actions, including class certification, summary judgment, and trial, the substantial benefits of the settlement favor final approval of the Settlement. Berry Decl., ¶ 24.

### 2.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-16-

While Plaintiffs believe their case is strong, substantial risk is inherent in all cases. This case involves a proposed class of approximately 35,985 individuals (SA, p. 1) and a complicated and technical factual background in a relatively novel area: data breach litigation. Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a particularly complex class action due to the standing challenges plaintiffs face in data breach class actions. *See, e.g., In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

Moreover, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and most uncertain of all class action litigation, making accepting a favorable settlement the more prudent course. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. As in any data breach case, establishing causation on a class-wide basis also remains uncertain.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the Class. Therefore, this factor favors approval. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

### 3.   The Risk of Maintaining Class Action Status Through Trial

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-17-

If the Parties were to proceed to litigate their claims through trial, Plaintiffs would encounter risks in obtaining and maintaining certification of the Class. The Class has not yet been certified, and Defendant will certainly oppose certification. Thus, Plaintiffs "necessarily risk[s] losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, 2014 WL 12746376, at *10 (C.D. Cal. Sep. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017), and most recently in *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022)[5] and *In re Brinker Data Incident Litig.*, 2021 WL 1405508 (M.D. Fla., Apr. 14, 2021).[6] Thus, the scarcity of direct precedent amplifies the risks of continuing the Litigation.

### 4.  Amount Offered in Settlement

A settlement should stand or fall on the adequacy of its terms. *In re MRV Communs., Inc. Derivative Litig.*, 2013 WL 2897874, at *4 (C.D. Cal. June 6, 2013) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)). The settlement here reflects an excellent result in light of the challenges that come with data breach litigation. Specifically, the settlement provides substantial monetary relief to Class Members who submit valid Claim Forms. *See* SA, ¶ 2.3. Further, Plaintiffs and Class Members will receive, among other non-monetary relief, credit monitoring and identity theft protection for a year. *Id.*, ¶ 2.4. Finally, the settlement also involves significant business practice enhancements for Defendant's data security system, which

---

[5] *Marriott* was subsequently vacated and remanded in light of a defense based on a class action waiver clause unique to the facts of that case, the timeliness of asserting that defense, and its applicability. *In re Marriott Int'l, Inc.*, 78 F.4th 677, 685 (4th Cir. 2023). On November 29, 2023, the Hon. John Preston Bailey rejected Marriott's waiver, choice of law, and venue arguments and re-certified the classes that Judge Grimberg certified on May 3, 2022 with respect to both Marriott and Accenture. *In re Marriott Int'l Customer Data Sec. Breach Litig.,* No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29, 2023)

[6] The Eleventh Circuit affirmed, in part, this certification. *See Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 894 (11th Cir. 2023).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-18-

will help to protect the Settlement Class's PII going forward. *Id.*, ¶ 2.4. The $1,000,000 cash settlement fund, excluding these two, non-cash, benefits, represents a recovery of $27.79 per Settlement Class Member, which is on the very high end of recoveries in data breach class actions, as can be seen from the following chart of representative cases:

| Case Title | No. of Class Members | Settlement Fund | Amount Per Class Member | Credit Monitoring |
|---|---|---|---|---|
| *In re Equifax Inc. Data Security Breach Litig.*[7] | >147M | $380.5M | $2.59 | 4 years |
| *Atkinson, et al. v. Minted, Inc.*[8] | 4.2M | $5M | $1.19 | 2 years |
| *Hellyer et al. v. Smile Brands, Inc. et al.*[9] | 1.5M | $5M | $3.33 | 2 years |
| *In re Sonic Corp. Customer Data Sec. Breach Litig.*[10] | 1.5M | $4.325M | $2.88 | None |
| *Gupta v. Aeries Software, Inc.*[11] | 98,199 | $1.75M | $17.82 | 1 year |

Considering that this is an unsettled area of law fraught with the risk that the Class would not be certified and that Plaintiffs would not succeed at trial, the present settlement represents an excellent compromise of Plaintiffs' and the Settlement Class Members' claims. Berry Decl., ¶ 24.

In the instant matter, the benefits to the class are far superior to those offered in the above cases, as all Settlement Class Members are receiving substantial benefits, including reimbursement

---

[7] *In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *145, 149–50 (N.D. Ga. Mar. 17, 2020).
[8] *Atkinson v. Minted, Inc.*, No. 3:20-cv-03869-VC, 2021 U.S. Dist. LEXIS 244257, at *2–4 (N.D. Cal. Dec. 17, 2021).
[9] *Hellyer v. Smile Brands Inc.*, No. 8:21-cv-01886-DOC-ADS, 2023 U.S. Dist. LEXIS 137295, at *3 (C.D. Cal. Aug. 4, 2023).
[10] *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *3, 5 (N.D. Ohio Aug. 12, 2019).
[11] *Gupta v. Aeries Software, Inc.*, No. SA CV 20-0995 FMO (ADSx), 2023 U.S. Dist. LEXIS 36141, at *5–6 (C.D. Cal. Mar. 3, 2023).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

for Out-of-Pocket losses of up to $5,000; California Subclass CCPA Payments of $100; and a *Pro Rata* Payment estimated to be approximately $100 per Settlement Class Member who makes a claim, in addition to a year of credit-monitoring and identity-theft protection services and substantial Business Practice Commitments from Defendant.

Because the settlement here is similar to other settlements that courts, including those in this district, have approved, this factor reflects that the settlement is fair. *See Calderon v. Wolf Firm*, 2018 WL 6843723, at *8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiffs gathered all of the information that was available regarding Ethos and the Data Security Incident— including publicly-available documents concerning announcements of the Security Incident and notice of the Security Incident to its customers and various states' Attorneys General. Berry Decl., ¶ 25. The parties also informally exchanged Fed. R. Civ. Pro. Rule 408 informal discovery in advance of mediation and extensive mediation briefing. *Id.*, ¶ 8. Although the parties have not engaged in formal discovery, Settlement Class Counsel's experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area. *Id.*, ¶ 25. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10434013, at *4 (C.D. Cal. Oct. 12,

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-20-

2017). Accordingly, Plaintiff made a decision fully informed about the strengths and weaknesses of this case.

### 6. The Experience and Views of Counsel

Settlement Class Counsel initiated this lawsuit after Defendant announced the Data Security Incident, which impacted over 38,985 individuals. Settlement Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Berry Decl., ¶ 20. Having worked on behalf of the Class since the Data Security Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and resources to this litigation, Settlement Class Counsel fully endorse the settlement. Berry Decl., ¶ 26. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Nat'l Rural Telecomm. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004). Therefore, this factor supports approval.

### 7. The Reaction of the Class Members to the Proposed Settlement

The deadline to object or opt-out was November 20, 2023. In response to 35,393 direct postcard and 11 email notices, no objections have been filed and no one has requested exclusion. Fenwick Decl., ¶¶ 18-19. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; 4 Newberg on Class Actions, § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]").

### 8. Lack of Collusion among the Parties

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-21-

The Parties negotiated a substantial, multifaceted settlement, as described above. The Parties did not negotiate attorneys' fees and the service award until after agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the attorneys' fees and the service award were negotiated during numerous and periodic arm's-length negotiations. SA, ¶¶ 7.1. Furthermore, Settlement Class Counsel are well versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Berry Decl., ¶ 24. Thus, the Court can be assured that the negotiations were not collusive.

### 9. The Settlement Treats Settlement Class Members Equitably

Finally, under Rule 23(e)(2)(D), the court must confirm that the settlement treats all class members equitably. Courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). In deciding whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Tech. Inc.*, WL 2467060, at *9 (S.D. Cal. May 12, 2020) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

Here, all Settlement Class Members benefit from the same relief, without preferential treatment. While Plaintiffs seek Court approval of a service award, as explained in detail in Plaintiffs' Motion for Attorneys' Fees, Costs , and Service Awards, the award of $2,000 per Plaintiff aligns with awards granted in similar cases, is presumptively reasonable, and does not call into

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-22-

question Plaintiffs' adequacy or the validity of the Settlement. Therefore, this factor also weighs in favor of approval.

## VII.    <u>CONCLUSION</u>

For these reasons, Plaintiffs respectfully request this Court finally approve the settlement.

Date: December 18, 2023                Respectfully Submitted,

*/s/ John J. Nelson*
John J. Nelson (SBN 317598)
jnelson@milberg.com
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
402 W Broadway, Suite 1760
San Diego, CA 92101
T: (858) 209-6941

M. Anderson Berry
aberry@justice4you.com
Gregory Haroutunian
gharoutunian@justice4you.com
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL CORP.**
865 Howe Avenue
Sacramento, CA 95825
T: (916) 239-4778
F: (916) 924-1829

Samuel J. Strauss
sam@turkestrauss.com
Raina C. Borrelli*
raina@turkestrauss.com
Brittany Resch*
brittanyr@turkestrauss.com
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703
T: (608) 237-1775
F: (608) 509-4423

Dylan J. Gould
dgould@msdlegal.com
Jonathan T. Deters
jdeters@msdlegal.com
**MARKOVITS, STOCK &**

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-23-

**DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
T: (513) 651-3700
F: (513) 665-0219

Jean S. Martin
jeanmartin@forthepeople.com
MORGAN & MORGAN COMPLEX
LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
T: (813) 559-4908
F: (813) 222-4795

*\* Pro hac vice forthcoming*

*Attorneys for Plaintiffs and Proposed Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 18, 2023 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

*/s/ John J. Nelson*
John J. Nelson (SBN 317598)
jnelson@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
402 W Broadway, Suite 1760
San Diego, CA 92101
T: (858) 209-6941

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-09203-SK

-24-